IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KANSAS CITY LIVE BLOCK                :
124 RETAIL, LLC,
                                      :
     Plaintiff and
     Counter-Defendant,               :
v.                                         Civil Action No. GLR-14-3236
                                      :
KOBE KANSAS, LLC, et al.,
                                      :
     Defendants and
     Counter-Plaintiffs.              :

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Plaintiff's/Counter-Defendant's, Kansas City Live Block 124 Retail, LLC ("KC Live"), Motion to Dismiss Defendants'/Counter-Plaintiffs', Kobe Kansas, LLC, Young W. Bae, and Chan H. Bae (the "Baes"), Counterclaim. (ECF No. 21).  This case involves alleged misrepresentations KC Live made to the Baes to induce them to open a restaurant in a mixed-use development that KC Live owned.  Principally at issue is whether the Baes state a claim for fraudulent inducement and whether their claim is barred by the compulsory counterclaim rule, the equitable doctrines of waiver and estoppel, or the statute of limitations.

The issues have been fully briefed, and the Motion is ripe for disposition.  The Court, having reviewed the Motion and supporting documents, finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2014).  For the reasons outlined below, KC Live's Motion to Dismiss will be denied.

## I.   BACKGROUND[1]

KC Live, a Maryland limited liability company, is the owner of a mixed-use leasing area in Kansas City, Missouri known as the Kansas City Power & Light District (the "District").  The Baes owned and operated a series of restaurants in Maryland and Virginia, including a location leased from the parent company of KC Live—the Cordish Company ("Cordish").  In February 2005, Cordish's Director of Leasing and Development, Michael Morris, contacted the Baes regarding an opportunity to open a restaurant in the District.

The Baes accepted an invitation to visit the District.  While there, Morris advised the Baes that "time was of the essence because most of the available premises were already leased to well-known nationally-operated franchises and only a few areas in the District were still available."  (Countercl. ¶ 21, ECF No. 17). Morris recommended a site within the "heart" of the District, and stated that a high-rise condominium building would be constructed above the site, which would "increase their customer base and the amount of foot traffic in that portion of the District."  (Id. ¶ 25).  Morris further represented that considering the prime location of the site within the district, the other tenants already committed to the District, and the housing that would be built above the site, the Baes could "easily achieve sales of $3 million

---

[1] Unless otherwise noted, the following facts are taken from the Counterclaim and are assumed true.  See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

per year" with their restaurant.  (Countercl. ¶ 26).

Following the Baes' visit, owners of the District continued to publicly represent that the District was expected to be well-occupied by national tenants when it opened in 2008.  For example, in early 2007, a Cordish executive announced during a press conference that the District had "commitments" for 85% of the total lease space.  (Countercl. ¶ 30).

In October 2006, having committed to launching a restaurant in the District, the Baes entered into a lease agreement with KC Live. Various problems, however, delayed the opening of the restaurant until eight months after the Baes began paying rent.  In April 2009, when the Baes were finalizing preparations for their grand opening, "nearly half" of the District remained unoccupied. (Countercl. ¶ 46).  When the restaurant finally opened in October 2009, all of the lease sites adjacent to the restaurant were vacant, nearly half of the lease sites in the entire District remained vacant, and the residential condominiums had not been constructed.  What is more, for the first two years of operation, annual sales for the restaurant averaged $600,000—far less than the $3 million projected.

In August 2011, KC Live filed suit against Defendants in this Court (the "2011 suit") for late opening charges and unpaid rent. Kansas City Live Block 121 Retail, LLC v. Kobe Kansas, LLC et al., No. 1:11-CV-02171-WDQ (D.Md dismissed Jan. 18, 2012).  Because the

Baes failed to respond to KC Live's complaint, the Clerk of the Court entered an Order of Default against the Baes for "want of answer or other defense."  Notwithstanding this Order, the parties ultimately agreed to settle the 2011 suit.  The terms of the settlement were memorialized in a Lease Amendment (the "2011 Amendment") dated November 22, 2011.  The 2011 Amendment reduced the amount owed by the Baes from approximately $2.1 million to approximately $350,000.  KC Live also agreed to dismiss the 2011 suit without prejudice.

Following the 2011 suit, Cordish reaffirmed its representation from 2007 that the District was 85% occupied.  The Baes' restaurant, however, was operating at a significant loss, with annual sales still averaging $600,000.  Consequently, in November 2013, the Baes ceased paying rent.  To date, at least twelve of the approximately forty-five sites remain vacant—a 73% occupancy rate— and all three lease sites adjacent to the Baes' restaurant have never been occupied since the restaurant opened.  Additionally, the condominiums that Morris promised have never been constructed.

In October 2014, KC Live again filed suit against Defendants in this Court, this time alleging breach of contract.  (ECF No. 1). KC Live filed an Amended Complaint in January 2015.  (ECF No. 11). Defendants answered on January 30, 2015 and asserted their Counterclaim for fraudulent inducement. (ECF No. 17).  KC Live filed a Motion to Dismiss the Counterclaim on March 4, 2015.  (ECF

4

No. 21).  Defendants then filed a Response in Opposition on April 1, 2015 (ECF No. 24), and KC Live filed a Reply to the Response in Opposition on April 24, 2015 (ECF No. 25).

## II.    DISCUSSION

### A.    Standard of Review

When reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss a counterclaim, "[t]his Court applies the same standard of review that would be applied to a Rule 12(b)(6) motion to dismiss a complaint."  First Data Merch. Servs. Corp. v. SecurityMetrics, Inc., No. RDB-12-2568, 2013 WL 6234598, at *3 (D.Md. Nov. 13, 2013) (citing Shoregood Water Co. v. U.S. Bottling Co., No. RDB-08-2470, 2010 WL 1923992, at *1-2 (D.Md. May 11, 2010)).  Accordingly, the counterclaim must allege enough facts to state a plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth.  Id. (citing Twombly, 550 U.S. at 555).

Thus, the Court "must determine whether it is plausible that the factual allegations in the [counterclaim] are 'enough to raise a right to relief above the speculative level.'"  Monroe v. City of

Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009).  And in doing so, the Court must examine the counterclaim as a whole, consider the factual allegations in the counterclaim as true, and construe the factual allegations in the light most favorable to the counter-plaintiff.  Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## B.   **Analysis**

KC Live advances four arguments for dismissing the Counterclaim: (1) it is procedurally barred by the compulsory counterclaim rule; (2) it is substantively barred by the equitable doctrines of waiver and estoppel; (3) it fails to state a claim; and (4) it is time-barred by the statute of limitations.  The Court will address them in turn.

### 1.   **Compulsory Counterclaim**

Federal Rule of Civil Procedure 13(a)(1)—the compulsory counterclaim rule—provides that a party must assert a counterclaim against an opposing party when it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and . . . does not require adding another party over whom the court cannot acquire jurisdiction."  "Although the rule does not explicitly so state, the effect of a defendant's failure to assert a counterclaim made compulsory by section (a) is to preclude

its assertion in a later action against the former plaintiff."
Mesker Bros. Iron Co. v. Donata Corp., 401 F.2d 275, 278–79 (4th
Cir. 1968).   KC Live argues the Baes' claim for fraudulent
inducement was a compulsory claim in the 2011 suit, thereby
precluding it from the present suit.   The Court is not persuaded.

The compulsory counterclaim rule does not apply if no
responsive pleading was filed in an earlier action that was
dismissed without prejudice.   See Mellon Bank, N.A. v. Ternisky,
999 F.2d 791, 795 (4th Cir. 1993).   Rule 13(a) simply "does not
come into play" when a defendant did not file a pleading in the
earlier action.   Id.   And because dismissals without prejudice are
not final judgments on the merits, Neal v. Residential Credit
Solutions, Inc., No. CIV. JKB-11-3707, 2013 WL 428675, at *8 (D.Md.
Feb. 1, 2013), they "do not bar subsequent suits by res judicata,"
Choice Hotels Int'l, Inc. v. Goodwin & Boone, 11 F.3d 469, 473 (4th
Cir. 1993).   See Painter v. Harvey, 863 F.2d 329, 331 (4th Cir.
1988) (explaining that whether res judicata would bar a subsequent
suit is one of the inquiries a court should consider when
determining if a counterclaim is compulsory).

Accordingly, because the Baes did not file a responsive
pleading in the 2011 suit, which was dismissed without prejudice,
the Court finds the compulsory counterclaim rule does not apply.

## 2.   Waiver & Estoppel

Generally, "a court may not consider extrinsic evidence at

the 12(b)(6) stage." Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). If, however, "a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" Id. (alterations in original) (quoting Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc., 367 F.3d 212, 234 (4th Cir. 2004)).

Also, a court may consider matters outside the pleadings if it converts a motion to dismiss into a motion for summary judgment. See Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) ("When 'matters outside the pleading are presented to and not excluded by the court, [a 12(b)(6) motion to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56.'" (quoting Fed.R.Civ.P. 12(d))). A court may, however, exclude matters outside the pleadings, thereby precluding conversion to summary judgment. Finley Lines Joint Protective Bd. Unit 200, v. Norfolk S. Corp., 109 F.3d 993, 996 (4th Cir. 1997) (explaining that Rule 12 vests district courts with discretion to determine whether or not to exclude matters outside the pleadings).

In arguing that the Counterclaim is substantively barred by the doctrines of waiver and estoppel, KC Live relies exclusively on matters outside the pleadings—the 2011 Amendment and a 2009 Tenant

Estoppel Certificate executed between Defendants and Bank of America.  Neither of these documents, however, was integral to the Counterclaim.  The integral components of the counterclaim are KC Live's representations to encourage Defendants to open a restaurant in the District.  Furthermore, the Court will exclude the 2011 Amendment and the 2009 Tenant Estoppel Certificate because KC Live did not style their Motion "in the alternative" as a motion for summary judgment.  See Laughlin, 149 F.3d at 261 (affirming conversion of motion to dismiss because motion's caption placed plaintiff on notice that it might be treated as a motion for summary judgment).

Thus, because KC Live's waiver and estoppel arguments are exclusively predicated on the contents of matters outside the pleadings, the Court will not consider them at this juncture of the litigation.

### 3.  Failure to State a Claim

Under Missouri law,[2] the elements of fraud are:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or his ignorance of its truth, (5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) the hearer's

---

[2] The Court will apply the common law of Missouri because "[a] federal court sitting in diversity must apply the substantive law of the state in which the cause of action arose." Nationwide Mut. Ins. Co. v. Welker, 792 F.Supp. 433, 437 (D.Md. 1992) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  Here, not only is the Baes' restaurant located in Missouri, but also many of the alleged misrepresentations were made in Missouri.

> ignorance of the falsity of the
> representation, (7) the hearer's reliance on
> the representation being true, (8) his right
> to rely thereon, and (9) the hearer's
> consequent and proximately caused injury.

Arnott v. Kruse, 730 S.W.2d 597, 600 (Mo.Ct.App. 1987). KC Live
contends the following representations are not actionable: (1)
residential condominiums would be built above the restaurant; (2)
the tenants occupying the District would include well-known
national franchises; and (3) the Baes' restaurant could achieve
annual sales of $3 million. The Court agrees.

"To constitute fraud, the alleged misrepresentation must
relate to a past or existing fact." Trotter's Corp. v. Ringleader
Rests., Inc., 929 S.W.2d 935, 940 (Mo.Ct.App. 1996) (citing Titan
Const. Co. v. Mark Twain Kansas City Bank, 887 S.W.2d 454, 459
(Mo.Ct.App. 1994)). "Mere statements of opinion, expectations, and
predictions for the future are insufficient to authorize a recovery
for fraudulent misrepresentation." Id. (citing Arnott, 730 S.W.2d
at 600). To be sure, the three representations that KC Live
attacks are not actionable because they are predictions for the
future. But these representations are not the only ones the Baes
allege in the Counterclaim. The Baes also allege KC Live
represented in late 2005 that most of the available premises in the
District were already leased to well-known, nationally-operated
franchises, and in 2007 that there were commitments for 85% of the

10

lease space in the District.  Because these representations related
to existing facts, they are actionable under Missouri law.  See id.

Thus, at this point in the litigation, the Court finds the
Baes succeed in stating a claim for fraudulent inducement, but only
with respect to the representations in 2005 and 2007 regarding the
number and identity of District tenants.

### 4.   Statute of Limitations

Finally, in Missouri, fraud claims are subject to a five-year
statute of limitations.  Mo.Rev.Stat. § 516.120 (West 2015).  This
limitations period does not commence until a cause of action for
fraud "accrues," which occurs not "when the wrong is done or the
technical breach of contract or duty occurs, but when the damage
resulting therefrom is sustained and is capable of ascertainment."
Id. § 516.100.

KC Live argues the Baes' cause of action for fraudulent
inducement accrued no later than 2009.  Indeed, the Baes allege
that in April 2009, half of the total lease sites in the District
were vacant, and in October 2009, all the adjacent lease sites were
also vacant.  (Countercl. ¶¶ 46, 50).  To be sure, then, by 2009
the Baes were on notice of the incongruities between KC Live's
representations about the number of "committed" lease sites and the
actual state of the other lease sites.  The Baes, however, allege
they could not have been aware of the harm resulting from KC Live's
representations until sometime between June 2010 and August 2010.

11

(Countercl. ¶ 127).  The Baes did not open their restaurant until October 2009.  At this point in the litigation, it is a question of fact whether they could ascertain by June 2010 the damages resulting from the lack of other District tenants.  <u>See</u> <u>Taryen Dev., Inc. v. Phillips 66 Co.</u>, 31 S.W.3d 95, 103 (Mo.Ct.App. 2000) ("Where the running of the statute of limitations depends upon when the plaintiff discovered or by reasonable diligence could have discovered the fraud, a question of fact is presented." (citing <u>Brown v. Scheible</u>, 814 S.W.2d 5, 7 (Mo.Ct.App. 1991))).  Furthermore, the Baes filed their fraud claim on January 30, 2015—less than five years after June 2010.

Accordingly, because the Court must assume the Baes' well-pleaded allegations are true for the purposes of KC Live's Rule 12(b)(6) Motion, <u>Albright</u>, 510 U.S. at 268, and there exists a question of fact of when the Baes could ascertain the harm resulting from the alleged misrepresentations, KC Live's Motion will be denied without prejudice at this time.

### III. CONCLUSION

For the foregoing reasons, the Court will deny KC Live's Motion to Dismiss.  (ECF No. 21).  A separate Order follows. Entered this 16th day of October, 2015

/s/

_____
George L. Russell, III
United States District Judge