**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | | |
|---|---|---|
| **KANSAS CITY LIVE BLOCK 124 RETAIL, LLC** | * | |
| | * | Case No. 14-cv-03236-GLR |
| Plaintiff and Counter-Defendant, | * | |
| v. | * | |
| **KOBE KANSAS, LLC,** *et al.* | * | |
| Defendants and Counter-Plaintiffs. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF/COUNTER-DEFENDANT'S
<u>MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff and Counter-Defendant, Kansas City Live Block 124 Retail, LLC ("KC Live" or "Counter-Defendant"), submits the following Memorandum in Support of its Motion for Summary Judgment on the Counterclaim filed by Defendants and Counter-Plaintiffs, Kobe Kansas, LLC ("Kobe"), Young W. Bae, and Chan H. Bae (collectively, the "Baes" or "Counter-Plaintiffs").

**<u>PRELIMINARY STATEMENT</u>**

The Baes claim they were fraudulently induced to enter into a commercial lease agreement and guaranty relating to their operation of a Japanese steakhouse in a mixed-use development project in Kansas City, Missouri. There is no question that the Baes' claim is barred by the doctrines of waiver and estoppel, under well-established Missouri law, and KC Live is entitled to judgment in its favor on the Counterclaim.

According to their own pleading, the Baes had knowledge of the alleged facts giving rise to their fraudulent inducement claim against KC Live by August 2011, at the absolute latest.

There is no dispute that, in November 2011, the Baes and KC Live agreed to amend the lease and guaranty in connection with the settlement of a claim by KC Live against the Baes for unpaid rent. There also is no dispute that in the lease amendment, the Baes unequivocally reaffirmed the validity of the same lease they now claim they were fraudulently induced to enter into in the first instance. Under Missouri law, the Baes waived any claim for fraud in the inducement against KC Live when they agreed to amend the lease in November 2011.

The Baes' fraudulent inducement claim is also precluded by the doctrine of estoppel. There can be no doubt that KC Live relied on promises and representations made by the Baes' in the November 2011 lease amendment and their ratification of the underlying lease. By entering into the lease amendment, the Baes were able to secure dismissal of the prior lawsuit and extract significant and valuable concessions from KC Live. The Baes' willingness to make those promises and representations in the November 2011 amendment, with full knowledge of the alleged facts underlying their claim for fraud, estops the Baes from taking a contrary position now and asserting their cause of action for fraud.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Bonds v. Leavitt*, 647 F.Supp.2d 541, 553 (D. Md. 2009). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A material fact is one that "might affect the outcome of the suit under the

governing law." *Id.* at 248. A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003). While the Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002), the Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). If the opposing party fails to demonstrate, through admissible evidence, a genuine issue of material fact for trial, summary judgment should be granted. *Celotex*, 477 U.S. at 322-23.

## UNDISPUTED PROCEDURAL & FACTUAL BACKGROUND

### 1. The Counterclaim Rests Entirely On Two Alleged Misrepresentations

The Baes' Counterclaim for fraudulent inducement was originally predicated on several alleged misrepresentations made by KC Live. On March 23, 2015, KC Live filed a motion to dismiss the Counterclaim. (ECF No. 21). Although the motion to dismiss was denied by the Court on October 16, 2015 (ECF No. 26), the Court rejected certain allegations made by the Baes, holding that "the three representations that KC Live attacks are not actionable because they are predictions for the future."[1] Mem. Op. at 10 (ECF No. 26). In denying the motion to dismiss,

---

[1] The Court concluded that the following three alleged misrepresentations are not actionable: (1) That residential condominiums were going to be built above Kobe's restaurant. Counterclaim ¶¶ 84-96; (2) that the tenants occupying the Power and Light District would include well-known national franchises, such as P.F. Changs and the

3

the Court also expressly declined to rule upon KC Live's arguments regarding waiver and estoppel, noting that those two argument were better suited for a motion for summary judgment due to their reliance in part on facts outside the four corners of the Counterclaim. *Id.* at 9.

Ultimately, the Court permitted the Counterclaim to proceed on the basis of two alleged statements:

1) That "KC Live represented to the Baes in late 2005 that most of the available premises in the District were already leased to well-known, nationally-operated franchises."

2) That KC Live stated "in 2007 that there were commitments of 85% of the lease space in the district."

*Id.* at 10-11. More specifically, with respect to these two representations, the Baes allege that "Mr. Michael Morris, the Director of Leasing and Development for the Cordish Company at the time," told the Baes during a September 2005 tour of the District that "most of the available premises were already leased to well-known, nationally operated franchises." Counterclaim, ¶¶ 13, 21 (ECF No. 17) (hereinafter "CC __"). The Baes also contend that, on January 5, 2007, "Blake Cordish, vice president of Cordish, announced during a press conference that the … District had 'commitments' for 85 percent of the … project." *Id.* ¶ 30.

## 2. The Lease And Guaranty

A true and correct copy of the commercial lease agreement that is at the heart of this dispute is attached hereto as **Exhibit 1**, and was made and effective as of September 15, 2008, but executed on September 24, 2009 (the "Lease"). A true and correct copy of the Guaranty provided by the Baes is attached as "Exhibit G" to the Lease.[2]

---

Cheesecake Factory. *Id.* ¶¶ 98-110; and (3) that a Kobe restaurant could achieve sales of $3 million in the Power and Light District. *Id.* ¶¶ 112-124. Mem. Op. at 10 (ECF No. 26).

[2] There is no dispute that this is the operative Lease and Guaranty. CC, footnote 3 (and Exhibit 5 attached thereto). Nevertheless, each of the documents submitted in support of KC Live's Motion for Summary Judgment is

### 3. Plaintiff's 2011 Lawsuit Against Defendants For Unpaid Rent

In August 2011, KC Live sued the Baes in this Court for unpaid rent owed under the Lease and Guaranty. That case was captioned *Kansas City Live Block 124 Retail, LLC v. Kobe Kansas, LLC et al.*, Case No. 1:11-CV-02171-WDQ (the "2011 Action"). CC ¶ 58; Fowler Aff. ¶ 7. The parties agreed to settle the 2011 Action and executed a Lease Amendment dated November 22, 2011 (the "2011 Amendment") for that purpose. CC ¶ 63; Fowler Aff. ¶ 8. A copy of the 2011 Amendment is attached hereto as **Exhibit 3**.

### 4. Relevance Of The 2011 Amendment

Pursuant to the 2011 Amendment, the Baes admitted and agreed, among other things, that the amounts then-due and owed by the Baes under the terms of the Lease and Guaranty totaled $2,122,430.88 (as of July 31, 2011). CC ¶ 64; Exh. 3, ¶ 2 (and Exhibit A thereto); Fowler Aff. ¶ 9. KC Live, however, agreed to conditionally waive all but a fraction of that amount on the condition that the Baes strictly complied with their obligations under the 2011 Amendment and the Lease and Guaranty for the balance of the lease term. Exh. 3, ¶ 2; Fowler Aff. ¶ 10. KC Live also conditionally abated common area maintenance charges ("CAM") under the Lease for the period through October 31, 2013, provided the Baes strictly complied with their obligations under the 2011 Amendment and the Lease and Guaranty for the balance of the lease term. Exh. 3, ¶ 1; Fowler Aff. ¶ 11. Notwithstanding those concessions, the parties expressly acknowledged and "agree[d], however, that an Event or Events of Default exist over Tenant's failure to pay the amounts due under the Lease and Landlord is conditionally agreeing not to exercise its remedies under the Lease on account thereof pending strict compliance with the provisions of the Lease and this Agreement." Exh. 3, ¶ 2. The 2011 Amendment also specified that "[e]xcept as

---

authenticated in the accompanying Affidavit of Robert C. Fowler attached hereto as **Exhibit 2** (hereinafter, "Fowler Aff.").

otherwise specifically provided herein, Tenant shall pay on a timely basis all Rent due under the Lease and shall otherwise comply with its obligations under this Agreement and the Lease." *Id.* ¶ 6. Upon entering into the 2011 Amendment, KC Live agreed to dismiss – and did dismiss – the 2011 Action without prejudice. *Id.* ¶¶ 2, 9; Fowler Aff. ¶ 12.

By entering into the 2011 Amendment, the Baes expressly agreed, represented, and affirmed that KC Live "has fully complied with its obligations under this Lease and that [Kobe] and [the Baes] ***have no basis to assert any claim of breach by [KC Live] of its obligations under the Lease or otherwise***." Exh. 3, ¶ 8 (emphasis added). The Baes also expressly agreed that, except as specifically modified by the Lease Amendment, ***"[a]ll other terms and conditions of said Lease shall remain and continue in full force and effect and shall be deemed unchanged***," and again affirmatively represented and warranted that "the Lease is in full force and effect and that Landlord [is] not in default or breach of its obligations under the Lease." *Id.* ¶ 10 (emphasis added).

Each and every one of the foregoing representations by the Baes was relied upon by KC Live when it agreed to settle the 2011 Action, conditionally waive the amounts then-owed under the Lease, and conditionally abate CAM through October 31, 2013. Fowler Aff. ¶ 13.

### 5. The Baes Have Defaulted Under The Lease

The Baes freely admit that they have not paid any rent to KC Live since November 2013, thus breaching the express terms of the Lease and the 2011 Amendment. CC ¶ 75. The Baes have continued to occupy the premises since the execution of the 2011 Amendment. Fowler Aff. ¶ 14.

## ARGUMENT

Under Missouri law,[3] when the Baes signed the 2011 Amendment they affirmatively waived any claim that KC Live fraudulently induced them into executing the underlying Lease. In the alternative, the Baes' execution of the 2011 Amendment estops them from asserting any fraudulent inducement claim against KC Live now.

### 1. Defendants' Counterclaim Is Barred By The Doctrine Of Waiver

Under Missouri law, waiver is "the intentional relinquishment of a known right, and may be implied from conduct." *Howe v. Lever Bros. Co.,* 851 S.W.2d 769, 775 (Mo. App. 1993) (internal citation omitted). Where waiver is implied, "the conduct must clearly and unequivocally show a purpose to relinquish the right." *Brown v. State Farm Mut. Auto. Ins. Co.,* 776 S.W.2d 384, 386–87 (Mo. banc 1989). "To make out a case of implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part." *Quirk v. Columbian Nat'l Life Ins. Co.,* 207 S.W.2d 551, 557 (Mo. Ct. App. 1947). Waiver differs from estoppel in that waiver does not require one to be misled to his or her prejudice or into an altered position. *Vill. of Big Lake v. BNSF R. Co.,* 433 S.W.3d 460 (Mo. Ct. App. 2014).

It is black letter Missouri law that when one party to a contract, with knowledge of a second party's fraudulent conduct, enters into a new contract regarding the same subject matter as the original contract, the first party is conclusively deemed to have waived any right to maintain an action for fraud in the inducement with respect to the original contract. *Peck v. Jadwin,* 704 S.W.2d 708, 711-12 (Mo. Ct. App. 1986) ("The authorities are unanimous in holding that where one has been induced by fraud to enter into a contract, and *after discovery of the fraud,* enters into an agreement concerning the subject matter of the contract, he is

---

[3] The Court previously determined that Missouri law applies to this dispute. Mem. Op. at 9, n. 2 (ECF 26).

conclusively deemed to have waived any claim for damages on account of fraud.") (emphasis in original) (quotation and citations omitted); *Anselmo v. Manufacturers Life Ins. Co.*, 771 F.2d 417, 420 (8th Cir. 1985) ("It is well settled that a valid fraud claim is relinquished when the victim of the fraud enters into a subsequent agreement with the perpetrator concerning the same subject matter."); *Brown v. South Joplin Lead & Zinc Mining Co.*, 132 S.W. 693, 695 (Mo. 1910) ("If at the time the parties entered into the new agreement the facts as to the fraud and deceit were known, it is to be presumed that both parties acted with that question in view, and the new agreement was the wiping out of all old scores."); *Cantley v. Plattner*, 67 S.W.2d 125, 129 (Mo. Ct. App. 1934) ("[W]here a party entitled to recover for fraud and deceit has knowledge of the fraud and deceit in the original contract and thereafter makes a new agreement, the case law seems to preclude a recovery for the fraud and deceit tincturing the original contract.") (quoting *Brown*, 132 S.W. at 694). A claim for fraud is waived where the party claiming fraud has either "actual or imputed knowledge of the facts constituting the alleged fraud" at the time it enters into a subsequent agreement with the alleged perpetrator. *Peck*, 704 S.W.2d at 711.

Missouri courts have enforced the doctrine of waiver under such circumstances for well over 100 years:

- In *Brown*, the Missouri Supreme Court determined that, where an original mining lease was ratified and modified by a subsequent lease, and the lessee had knowledge of the alleged fraud at the time of the second lease, the lessee waived its right to maintain any claim of fraud in the inducement as to the original lease. 132 S.W. at 693-95.

- In *Peck*, the buyers entered into an agreement with sellers to purchase a resort. Peck, 704 S.W.2d at 709-11. When the buyers' business failed, the parties entered into a

second agreement in which the original sellers repurchased the resort from the buyers after the buyers had learned of the sellers' fraudulent conduct regarding the original transaction. *Id.* The Missouri Court of Appeals, relying on and citing longstanding precedent from Missouri and other authorities, explained that the buyers decision to enter into a new contract had the "legal effect of eliminating the cause of action [for fraud]." *Id.* at 712.

- In *Anselmo*, the Eighth Circuit applied Missouri law in affirming the trial court's judgment that an employee claiming fraudulent inducement who entered into a subsequent termination agreement with his employer "fully aware of the supposed fraud ... [had] waived any right he may have had to bring that claim." 771 F.2d at 421.

Each of these cases (and the others cited above) clearly preclude the Baes' claim for fraudulent inducement. There is no dispute that, as early as October 2010 (according to the Baes' own Counterclaim), but certainly no later than no later than August 2011, the Baes had actual knowledge of the alleged facts and circumstances underlying their claim that KC Live fraudulently induced the Baes to sign the Lease. CC ¶ 127. There is no dispute that, subsequent to August 2011, the Baes entered into the November 22, 2011 Lease Amendment, and in doing so re-affirmed the Lease and all obligations thereunder while extracting significant concessions from KC Live. Exh. 3; *see also* Fowler Aff. ¶¶ 7-13. Accordingly, under controlling Missouri authority, the Baes expressly waived their right to maintain any claim against KC Live for fraud in the inducement with respect to the Lease.

\

### 2. In the Alternative, The Baes Are Estopped From Asserting Their Counterclaim For Fraudulent Inducement

KC Live is similarly entitled to summary judgment in its favor on the Baes' Counterclaim under the doctrine of estoppel. The doctrines of waiver and estoppel are similar, but distinct. Estoppel requires (1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement or act. *Rooks v. Lincoln Cnty. Farmers Fire & Lightning Mut. Ins. Co.*, 830 S.W.2d 507, 511 (Mo. Ct. App. 1992); *Mississippi–Fox Drainage Dist. v. Plenge*, 735 S.W.2d 748, 754 (Mo. App. 1987). The estoppel doctrine "seeks to foreclose one from denying his own expressed or implied admissions which have in good faith and in pursuance of its purpose been accepted and relied upon by another." *Lake Saint Louis Com. v. Ravenwood Prop.*, 746 S.W.2d 642, 646 (Mo. Ct. App. 1988). Equity views suits brought long after transactions have occurred with disfavor. *Grieshaber v. Grieshaber*, 793 S.W.2d 161, 163 (Mo. Ct. App. 1990).

By entering into the 2011 Amendment, the Baes expressly reaffirmed the validity of the Lease and made numerous promises to KC Live regarding their intent to strictly comply with the Lease through the end of the Lease term. *See e.g.* Exh. 3, ¶ 1 (requiring Tenant's compliance with all provisions of 2011 Amendment and Lease through end of Lease term), ¶ 2 (same), ¶ 6 (same), ¶ 7 (same, and providing that upon failure of Tenant to strictly comply with Lease, Landlord would not be bound by concessions in 2011 Amendment, and all sums due under Lease and 2011 would become "immediately due and payable."), and p. 3 (wherein the Baes personally consented to the 2011 Amendment and expressly ratified the existing Lease and Guaranty).

There is no dispute that KC Live took action in reliance upon the Baes' representations and affirmations in the 2011 Amendment. Specifically, KC Live dismissed the 2011 Action, resumed the parties' commercial landlord/tenant relationship, and conditionally granted over $2 million in rent and CAM concessions.

Under Missouri law, the Baes are estopped from bringing a claim against KC Live based on allegations or events that were indisputably known by the Baes prior to entering into the November 22, 2011 Lease Amendment. The Baes' incipient claims that they were "fraudulently induced" to enter into the Lease – claims which they asserted for the first time on January 30, 2015, more than three (3) years after executing the 2011 Amendment – are grossly inconsistent with all of the conduct, representations and assurances they provided in the 2011 Amendment. Accordingly, the doctrine of estoppel bars the Counterclaim.

## CONCLUSION

WHEREFORE, for the forgoing reasons, Plaintiff and Counter-Defendant, Kansas City Live Block 124 Retail, LLC, respectfully requests that the Court grant summary judgment in its favor and against Defendants and Counter-Plaintiffs, Kobe Kansas, LLC, Young W. Bae, and Chan H. Bae, on all claims set forth in the Counterclaim.

Respectfully submitted,


*/s/ Todd M. Reinecker*
Todd M. Reinecker (Fed Bar No. 27082)
Joshua J. Gayfield (Fed Bar No. 29189)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
410.727.6464 (t)
410.385.3700 (f)
treinecker@milesstockbridge.com
jgayfield@milesstockbridge.com

*Attorneys for Plaintiff /Counter-Defendant,
Kansas City Live Block 124 Retail, LLC*