```
             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

KANSAS CITY LIVE BLOCK         :
124 RETAIL, LLC,
                               :
    Plaintiff and
    Counter-Defendant,         :

v.                             :    Civil Action No. GLR-14-3236

KOBE KANSAS, LLC, et al.,      :

    Defendants and             :
    Counter-Plaintiffs.
                               :
```

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Plaintiff/Counter-Defendant's, Kansas City Live Block 124 Retail, LLC ("KC Live"), Motion for Leave to File Second Amended Complaint (ECF No. 35) and Motion for Summary Judgment on Defendant/Counter-Plaintiffs', Kobe Kansas, LLC, Young W. Bae, and Chan H. Bae (the "Baes"), Counterclaim (ECF No. 36). Also pending is the Baes' Motion for Leave to File an Amended Counterclaim (ECF No. 42).[1] The Motions are ripe for disposition. Having reviewed the Motions and supporting documents, the Court finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant the Motions for Leave to Amend and deny KC Live's Motion for Summary Judgment.

---

[1] Also pending is the parties' Consent Motion for Extension of Time (ECF No. 39). The Court will deny this Motion as moot.

## I.   BACKGROUND[2]

The Baes asserted their original Counterclaim on January 30, 2015, raising one claim for fraudulent inducement.  (ECF No. 17). On October 16, 2015, the Court denied KC Live's Motion to Dismiss the Baes' Counterclaim.  (ECF No. 27).  In its Memorandum Opinion, the Court concluded the following statements by KC Live are actionable for purposes of the Baes' fraudulent inducement claim: (1) most of the available premises were already leased to well-known nationally-operated franchises and only a few areas in the District were still available; and (2) there were commitments for 85% of the total lease space in the District.  (Oct. 16, 2015 Mem. Op. ["Mem. Op."] at 10–11, ECF No. 26).

After the Court denied KC Live's Motion to Dismiss, the Court entered the parties' jointly proposed Scheduling Order on January 13, 2016.  (ECF No. 31).  The Scheduling Order establishes a February 16, 2016 deadline for amending pleadings.  (Id.).  On this deadline, KC Live filed its unopposed Motion for Leave to File Second Amended Complaint (ECF No. 35).  KC Live also filed a Motion for Summary Judgment on February 18, 2016 (ECF No. 36).  On March 22, 2016—over a month after the Scheduling Order deadline—the Baes filed their Motion for Leave to File an Amended Counterclaim (ECF No. 42).  On this same date, the Baes filed an Opposition to KC

---

[2] The Court discusses only the procedural background of this case.  The Court set forth the facts that gave rise to this action in its October 16, 2015 Memorandum Opinion (ECF No. 26).

Live's Motion for Summary Judgment (ECF No. 41). On April 15 and 18, 2016, KC Live filed its Response in Opposition to the Baes' Motion for Leave to File an Amended Counterclaim (ECF No. 48) and its Reply in Support of Summary Judgment (ECF No. 50), respectively. Finally, the Baes submitted their Reply in Support of their Motion for Leave to File an Amended Counterclaim on May 2, 2016 (ECF No. 53).

## II.  DISCUSSION

### A.  Motions for Leave to Amend

#### 1.  Standard of Review

Motions for leave to amend counterclaims are subject to the same standards as motions for leave to amend complaints. See Ground Zero Museum Workshop v. Wilson, 813 F.Supp.2d 678, 706 (D.Md. 2011). When a party moves to amend its complaint or counterclaim after the scheduling order deadline has passed, the party has the burden of satisfying a two-prong test. Odyssey Travel Ctr., Inc. v. RO Cruises, Inc., 262 F.Supp.2d 618, 631 (D.Md. 2003). The first prong is Federal Rule of Civil Procedure 16(b)(4), which provides that "[a] schedule may be modified only for good cause and with the judge's consent." Id. "[A] court's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril[.]'" Rassoull v. Maximus, Inc., 209 F.R.D. 372, 374 (D.Md. 2002) (quoting Potomac Elec. Power Co. v. Elec. Motor Supply, Inc., 190

3

F.R.D. 372, 375-76 (D.Md. 1999)). Thus, the good cause analysis under Rule 16(b)(4) is "less concerned with the substance of the proposed amendment" and more concerned with "the timeliness of the amendment and the reasons for its tardy submission." Id. at 373-74. Indeed, "[t]he primary consideration of the Rule 16(b) 'good cause' standard is the diligence of the movant." Id. at 374. "Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'" Id. (quoting W.Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc., 200 F.R.D. 564, 567 (S.D.W.Va. 2001)). If a party was not diligent in seeking to modify the scheduling order, "the inquiry should end." Id. (quoting Marcum v. Zimmer, 163 F.R.D. 250, 254 (S.D.W.Va. 1995)).

There is good cause for amending a complaint or counterclaim after the scheduling order deadline when "at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline." Tawwaab v. Va. Linen Serv., Inc., 729 F.Supp.2d 757, 768 (D.Md. 2010). The Court may consider the following factors when determining whether there is good cause: "danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." Id. at 768-69 (quoting Rothenberg v. Marriott Int'l, Inc., No. CCB-08-173, 2008 WL 687033, at *1 (D.Md. Feb. 29, 2008)).

4

Once a party has demonstrated good cause for an untimely amended pleading, the party then bears the burden of satisfying the second prong: Rule 15(a). Odyssey, 262 F.Supp.2d at 631. Under this Rule, "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed.R.Civ.P. 15(a)(2). Although the federal rules favor granting leave to amend, the decision lies within the sound discretion of the district court. Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va., 985 F.2d 164, 167-68 (4th Cir. 1993) (citing Nat'l Bank v. Pearson, 863 F.2d 322, 327 (4th Cir. 1988)). Leave to amend is properly denied when amendment would prejudice the opposing party, the moving party has exhibited bad faith, or amendment would be futile. Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 446 (4th Cir. 2001) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)). An amendment would be futile if it would fail to survive a motion to dismiss. See Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995).

   2.  **Analysis**

The Baes must satisfy the foregoing two-prong test because they filed their Motion for Leave to File an Amended Counterclaim approximately one month after the Scheduling Order deadline for amending pleadings (the "Amendment Deadline"). KC Live argues the Baes have not shown good cause because they seek leave to allege facts they knew of months or years prior to the Amendment Deadline.

KC Live also contends that the Baes' delay evinces a lack of diligence and even assuming the Baes have shown good cause, the Baes' amendment would be futile because their fraudulent inducement claim would not survive a motion for summary judgment.

The Baes counter that amending their Counterclaim would not prejudice KC Live or delay the resolution of this case because the Baes do not add a new cause of action, discovery has recently commenced, and KC Live is already aware of many of the new facts in the Baes' Amended Counterclaim.  The Baes provide two explanations for their tardy Amended Counterclaim.  First, it would have been imprudent to "raise the stakes by doubling-down on litigation" while settlement negotiations were pending.  (Defs.' Reply Supp. Mot. Leave File Am. Countercl. at 4, ECF No. 53).  Second, KC Live's Second Amended Complaint—filed on the Scheduling Order deadline—necessitated additional counterclaim allegations from the Baes.  Lastly, the Baes contend that amending their Counterclaim would not be futile because their Counterclaim has already survived a motion to dismiss.

The Court begins with the first prong of the two-prong test: whether the Baes have shown good cause.  None of the facts the Baes add in their Amended Counterclaim occurred after the Amendment Deadline.  Nevertheless, the Court finds the Baes were diligent in amending their Counterclaim.  On January 20, 2016, the Honorable Beth P. Gesner scheduled a settlement conference for February 22,

2016. (ECF No. 33). The Amendment Deadline fell between these dates. The Baes explain they were concerned that amending their Counterclaim between these dates could undermine settlement negotiations because it might signal to KC Live that the Baes were more interested in proceeding with the litigation than settling the case. The Court finds this explanation reasonable. Also, the Baes amended their Counterclaim exactly one month after the settlement conference. This minor delay does not strike the Court as indicating carelessness or a lack of diligence, particularly because the Baes maintain that settlement negotiations were still ongoing in late March 2016, (Defs.' Reply Supp. Mot. Leave File Am. Countercl. at 5), and the Baes were also preparing their Opposition to KC Live's Motion for Summary Judgment during this period.

In their Amended Counterclaim, the Baes do not add new claims. They do, however, add allegations that could be material to KC Live's affirmative defenses of waiver and estoppel: the annual sales figures the Baes' restaurant generated after the parties executed the 2011 Amendment. The fact discovery deadline is August 1, 2016, which provides KC Live with ample time to discover these sales figures, if necessary. Because the Baes have not surprised KC Live with a new cause of action near the end of discovery, the Court finds no bad faith, prejudice, or risk of delay in the proceedings. Thus, the Court concludes the Baes have shown good cause for amending their Counterclaim after the Amendment Deadline.

7

Turning to the second prong, the Court highlights that KC Live confuses the standard for futility. An amendment would be futile if it would fail to survive a motion to dismiss, not a motion for summary judgment. See Perkins, 55 F.3d at 917. In their Amended Counterclaim, the Baes have not deleted any of the allegations that led the Court to deny KC Live's Motion to Dismiss the Baes' original Counterclaim. As such, the Court finds it would not be futile to accept the Baes' Amended Counterclaim and the Court will grant the Baes' Motion.

As for KC Live's Motion for Leave to File Second Amended Complaint, KC Live filed it before the Scheduling Order deadline passed and it is unopposed. Finding no prejudice, bad faith, or futility, the Court will grant KC Live's Motion.

**B.  KC Live's Motion for Summary Judgment**

    **1.  Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . .

8

admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A).

When a defendant moves for summary judgment on an affirmative defense, "it must conclusively establish all essential elements of that defense." Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012). The defendant bears the initial burden of producing sufficient evidence supporting its affirmative defense. See id.; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The defendant must go beyond the pleadings with affidavits, depositions, interrogatories or other admissible evidence to show specific facts that amount to a genuine issue for trial. Celotex Corp., 477 U.S. at 324. Once the defendant meets this initial burden, "the burden of production shifts to the plaintiff to 'come forward with specific facts showing that there is a genuine issue for trial.'" Ray, 673 F.3d at 299 (quoting Brinkley v. Harbour Recreation Club, 180 F.3d 598, 614 (4th Cir. 1999)). If, however, the defendant "fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing." Id. at

299-300 (quoting Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248.

**2.   Analysis**

KC Live moves for summary judgment on the Baes' counterclaim for fraudulent inducement on the basis of two affirmative defenses: waiver and estoppel. See Drannek Realty Co. v. Nathan Frank, Inc., 139 S.W.2d 926, 929 (Mo. 1940) (stating that waiver and estoppel are affirmative defenses).[3] When a party to a contract enters into a second contract regarding the same subject matter as the first contract, the party is deemed as a matter of law to have waived the

---

[3] In its October 16, 2015 Memorandum Opinion, the Court concluded that the substantive law of Missouri applies to this action. (See Memo Op. at 9 n.2).

10

right to maintain an action for fraudulent inducement with respect to the first contract if the party had actual or imputed knowledge of the fraud when executing the second contract.  See Peck v. Jadwin, 704 S.W.2d 708, 711–12 (Mo.Ct.App. 1986).  The defense of estoppel "arises from the unfairness of permitting a party to assert rights belatedly if he knew of those rights but took no steps to enforce them until the other party has, in good faith, become disadvantaged by changed conditions."  Speedie Food Mart, Inc. v. Taylor, 809 S.W.2d 126, 131 (Mo.Ct.App. 1991) (citing Stenger v. Great S. Sav. & Loan Ass'n, 677 S.W.2d 376, 383 (Mo.App. 1984)).  The party asserting estoppel must show that the opposing party had actual knowledge of the rights it elected not to pursue.  See id. (citing Stenger, 677 S.W.2d at 383–84).

KC Live argues it is entitled to summary judgment because there is no genuine dispute that the Baes had actual or imputed knowledge of the facts constituting the alleged fraud when the Baes signed the 2011 Amendment.  The Baes contend that summary judgment is not warranted because discovery is not complete and KC Live has failed to present any facts showing the Baes had actual or imputed knowledge.

Ordinarily, "summary judgment is appropriate only after 'adequate time for discovery.'"  Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996) (quoting Celotex, 477 U.S. at 322).  A nonmovant, however, "cannot complain that summary

11

judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to permit discovery before the district court ruled." Id.  A Rule 56(d) affidavit or declaration is one way to raise adequately the issue that discovery is needed.  See Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 341 (D.Md. 2011).  But, "Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery." Id. at 342 (quoting Young v. UPS, No. DKC-08-2586, 2011 WL 665321, at *20 (D.Md. Feb. 14, 2011)).  A "Rule 56(d) request for additional discovery is properly denied 'where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" Id. (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

The Baes submit a Rule 56(d) declaration in which counsel states that in order to competently defend KC Live's Motion for Summary Judgment, the Baes require discovery regarding whether (1) KC Live's representations were false, (2) KC Live continued making false statements up to the execution of the 2011 Amendment, and (3) KC Live attempted to conceal the falsity of its representations. (ECF No. 41-3).  While these facts could defeat a future motion for summary judgment from KC Live, they are not material to KC Live's current Motion because they do not concern whether the Baes knew or should have known that KC Live's representations before the 2011

12

Amendment were false.  Thus, the Baes' Rule 56(d) declaration does not warrant denying KC Live's Motion.

Regardless, the Court finds that KC Live has not met its initial burden of identifying facts demonstrating that the Baes had actual or imputed knowledge.  Because waiver and estoppel are affirmative defenses, KC Live bears the initial burden of producing sufficient evidence in support of these defenses.  See Ray, 673 F.3d at 299; Celotex, 477 U.S. at 323.  KC Live, however, points only to paragraph 127 of the original Counterclaim in which the Baes allege that "it was only during the period of June 2010 – August 2011 . . . when other restaurants were failing that [the Baes] first had reason to suspect that the national chains would not be coming to the District."  (Countercl. ¶ 127, ECF No. 17). KC Live maintains this allegation concedes that the Baes had imputed knowledge of their fraudulent inducement claim before they executed the 2011 Amendment.  To be sure, on its face, this allegation appears to address the material issue of imputed knowledge.  KC Live, however, has not gone beyond the pleadings to identify any admissible evidence showing that the Baes had imputed knowledge.  See Celotex Corp., 477 U.S. at 324 (explaining that at the summary judgment stage, the party bearing the burden of proof on a claim or defense must go beyond the pleadings to show a genuine dispute for trial).

13

Even assuming KC Live has met its initial burden, the Baes generate a genuine dispute of material fact precluding summary judgment for KC Live. A consequent and proximately caused injury is one of the elements of a fraud claim. See Arnott v. Kruse, 730 S.W.2d 597, 600 (Mo.Ct.App. 1987) (listing the nine elements of a fraud claim). The Baes present affidavits stating they did not know that they had been injured by KC Live's false representations "until annual sales from the Kobe restaurant dropped precipitously and other tenants were fleeing the District." (Bae Affs. ¶ 16, ECF Nos. 41-1, 41-2). According to the affidavits, the Baes' restaurant in the District experienced its most profitable year from October 2011 through September 2012, generating sales of $935,000. (Id. ¶ 9). Sales then fell to $610,000 from October 2013 through September 2014 (id. ¶ 17) and to $490,000 from October 2014 through September 2015 (id. ¶ 19). Because sales had fallen by $300,000 in September 2014—almost three years after the parties executed the 2011 Amendment—the Baes generate a genuine dispute as to whether they knew before signing the 2011 Amendment that they had been injured by KC Live's allegedly false statements.

Accordingly, the Court concludes that KC Live is not entitled to judgment as a matter of law on its affirmative defenses and will deny without prejudice KC Live's Motion for Summary Judgment.

14

### III. CONCLUSION

For the foregoing reasons, the Court will GRANT KC Live's Motion for Leave to File Second Amended Complaint (ECF No. 35) and the Baes' Motion for Leave to File an Amended Counterclaim (ECF No. 42).  The Court will also DENY WITHOUT PREJUDICE KC Live's Motion for Summary Judgment (ECF No. 36) and DENY AS MOOT the parties' Consent Motion for Extension of Time (ECF No. 39).  A separate Order follows.

Entered this 29th day of June, 2016

                                                /s/
                                    _____
                                    George L. Russell, III
                                    United States District Judge