**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| KANSAS CITY LIVE BLOCK 124 RETAIL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. GLR-14-cv-3236** |
| | ) | |
| KOBE KANSAS, LLC, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

**SUPPLEMENTAL COUNTERCLAIM OF COUNTER-PLAINTIFFS
KOBE KANSAS, LLC, YOUNG W. BAE AND CHAN H. BAE**

Counter-Plaintiffs Kobe Kansas, LLC ("Kobe Kansas"), Young W. Bae and Chan H. Bae (collectively, "Counter-Plaintiffs"), by and through their undersigned counsel and pursuant to Rule 15 of the Federal Rules of Civil Procedure, hereby file their Supplemental Counterclaim and state as follows:

**The Parties**

1.      Paragraphs 1 through 4 of the Amended Counterclaim[1], with paragraph numbers, are adopted here pursuant to Fed. R. Civ. P. 10(b) and 10(c).

**Jurisdiction and Venue**

2.      Paragraphs 5 through 7 of the Amended Counterclaim, with paragraph numbers, are adopted here pursuant to Fed. R. Civ. P. 10(b) and 10(c).

---

[1] Counter-Plaintiffs' Motion for Leave to File an Amended Counterclaim [Docket No. 42] is still before the Court and ripe for a decision. Counter-Plaintiffs' have relied on the numbering of the paragraphs as set forth in that Amended Counterclaim in drafting the instant Supplemental Counterclaim.

**<u>Facts</u>**

I.     <u>Advertising for the Power and Light District</u>

     3.     Paragraphs 8 through 31 of the Amended Counterclaim, with paragraph numbers, are adopted here pursuant to Fed. R. Civ. P. 10(b) and 10(c).

II.     <u>The Lease</u>

     4.     Paragraphs 32 through 45 of the Amended Counterclaim, with paragraph numbers, are adopted here pursuant to Fed. R. Civ. P. 10(b) and 10(c).

III.     <u>2009 through 2011</u>

     5.     Paragraphs 46 through 81 of the Amended Counterclaim, with paragraph numbers, are adopted here pursuant to Fed. R. Civ. P. 10(b) and 10(c).

IV.     <u>2013 to Present</u>

     6.     Paragraphs 82 through 102 of the Amended Counterclaim, with paragraph numbers, are adopted here pursuant to Fed. R. Civ. P. 10(b) and 10(c).

V.     <u>The Termination of Tenancy</u>

     102.1.  Counter-Plaintiffs have operated under the same schedule at the restaurant since July 2014 when the restaurant stopped serving lunch because there was consistently no foot traffic in the District, and consequently little to no lunch business at the restaurant.

     102.2.  Counter-Plaintiffs continued to operate under this schedule through May 2016; specifically:

          a.     On Friday, May 6, 2016, the restaurant was open, the doors unlocked and the lights on.  *See* Surveillance Video Photographs, attached hereto as <u>Exhibit 11</u>.

      b.      On Saturday, May 7, 2016, the restaurant was open, the doors unlocked and the lights on.  *See* Surveillance Video Photographs, attached hereto as Exhibit 12.

      c.      The restaurant was closed on Sunday, May 8, 2016.

      d.      On Monday, May 9, 2016, the restaurant was open, the doors unlocked and the lights on.  *See* Declaration, attached hereto as Exhibit 13.

      e.      On Tuesday, May 10, 2016, the restaurant was open, the doors unlocked and the lights on.  *See* Exhibit 13.

102.3.  On Tuesday, May 10, 2016 at around 7:30 p.m., an employee of the restaurant became aware that a burglary had occurred earlier in the day when meat and seafood was stolen from the restaurant's freezer.  *See* Exhibit 13.

102.4.  Upon reviewing the surveillance footage from earlier on Tuesday, May 10, 2016, it was discovered that District and/or KC Live employees had entered the restaurant without permission and committed the burglary.  *See* Exhibit 13.

102.5.  The restaurant employee reported the burglary to the District's security office at approximately 7:55 p.m.  *See* Exhibit 13.

102.6.  The next day, Wednesday May 11, 2016, a restaurant employee was unable to enter the restaurant when he arrived for work before the locks had been changed, thereby excluding Counter-Plaintiffs from the Property. *See* Exhibit 13.

102.7.  An agent of KC Live thereafter informed the Baes that KC Live had ordered the locks to the restaurant be changed, without contacting or notifying the Baes and/or their counsel,

or obtaining their consent, and took possession of the Property during the continuance of the Lease because they believed the restaurant had been abandoned.

102.8.  Counter-Plaintiffs were in use of the Property in the days before KC Live re-took the premises, exercised dominion and control over the Property, and never acted or intended to relinquish their property rights thereto.

102.9.  On Friday, May 13, 2016, KC Live issued a Notice of Default to Kobe Kansas, LLC, care of its former counsel from several years ago, and not counsel involved in the current litigation since November 2014, stating that it had changed the locks because Kobe had "vacated and closed the Premises." A copy of the Notice of Default is attached hereto as Exhibit 14.

102.10.  KC Live's counsel later confirmed that the locks were changed because KC Live believed the restaurant had been abandoned. A copy of an e-mail from May 14, 2016, is attached hereto as Exhibit 15; a letter of May 18, 2016 is attached hereto as Exhibit 16.

102.11.  Confirming the point that KC Live thinks that Kobe abandoned, it has removed the Kobe restaurant from its marketing website.  *See* Website content obtained on June 8, 2016, attached hereto as Exhibit 17.

102.12.  Section 2601(iv) of the Lease provides that apparent abandonment and/or abandonment constitute an Event of Default under the Lease.  *See* Exhibit 5 to the Amended Counterclaim.

102.13.  According to Section 2602 of the Lease, upon the occurrence of an Event of Default due to abandonment, KC Live had two options:

> 2602(i)  Landlord may terminate this Lease and/or any services provided to Tenant under this Lease, by giving notice of such termination to Tenant, whereupon this Lease shall automatically cease and

terminate, and Tenant shall be obligated to immediately quit the Premises. […]

2602(ii)    Whether or not this Lease is terminated pursuant to Section 2602(i), Landlord may proceed to recover possession of the Premises under and by virtue of the provisions of the laws of the state where the Premises are located or by such other proceedings, including re-entry and possession, as may be applicable.

102.14.   KC Live has never provided notice of termination as contemplated by Section 2602 (i) of the Lease and it did not recover possession pursuant to the rules of the State of Missouri (*i.e.*, the "laws of the state where the Premises are located"), which require notice, as contemplated by Section 2602 (ii) of the Lease.

102.15.  As discussed previously, Counter-Plaintiffs had not abandoned but in fact the restaurant had been open the preceding days.

102.16.   Since Counter-Plaintiffs had not abandoned the restaurant, KC Live, by re-taking the premises, violated the Lease and/or Missouri law.

102.17.   Missouri law provides that KC Live's actions to re-take the premises, without notice as contemplated by the Lease and Missouri law, resulted in a termination of possession and the Lease as of May 11, 2016.  *See Brywood Ltd. Partners, L.P. v. H.T.G., Inc.*, 866 S.W.2d 903, 906 (Mo. App. 1993) (citations omitted).

## COUNT I
### (Fraudulent Inducement)

7.    Counter-Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

8.      Paragraphs 103 through 149 of the Amended Counterclaim, with paragraph numbers, are adopted here pursuant to Fed. R. Civ. P. 10(b) and 10(c).

WHEREFORE, Counter-Plaintiffs, Kobe Kansas, LLC, Young W. Bae and Chan H. Bae, demand judgment in the amount of $3,446,113.00 for actual damages, plus punitive damages in the amount of $1,000,000.00, plus reasonable attorneys' fees and litigation costs to which Counter-Plaintiffs are contractually entitled, plus any additional damages to which Counter-Plaintiffs are entitled, and such other and further relief as this Counter deems just and necessary.

## COUNT II
### (Declaratory Judgment)

150.    Counter-Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

151.    This is an action for a declaratory judgment pursuant to 28 U.S.C.A. § 2201, for the purpose of determining a question of actual controversy between the parties as more fully appears below.

152.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. Specifically, the Lease contemplates payment by Counter-Plaintiffs of annual minimum rent of $199,656.00 through February 4, 2019, which between the time of this filing and that date exceeds $500,000.00.

153.    There exists between the parties to this action an actual, justiciable controversy to which Counter-Plaintiffs are entitled to have a declaration of their rights and further relief, because of the facts, conditions, and circumstances hereinafter set out.

154.    On May 11, 2016, KC Live, without Counter-Plaintiffs' consent, entered and took possession of the Kobe restaurant during the continuance of Lease, not set to expire until February 4, 2019, and excluded Counter-Plaintiffs from the restaurant.

155.    KC Live stated they took such action because Counter-Plaintiffs had abandoned the restaurant.

156.    Counter-Plaintiffs had not abandoned the restaurant.

157.    By reentering and resuming possession of the restaurant in violation of Section 2602 of the Lease, and without providing any notice, KC Live terminated the Lease.

158.    KC Live contends that it did not terminate the Lease and that Counter-Plaintiffs remain liable thereunder until the Lease expires. *See* E-mail dated June 6, 2016, attached hereto as Exhibit 18.

159.    A declaratory judgment by this Court will terminate this controversy.

WHEREFORE, Counter-Plaintiffs, Kobe Kansas, LLC, Young W. Bae and Chan H. Bae, demand:

A.      That this Court determine and adjudicate the rights and liabilities of the parties with respect to the Lease by and between Counter-Plaintiffs and Counter-Defendant;

B.      That this Court determine that Counter-Plaintiffs did not abandon the restaurant;

C.      That this Court determine that Counter-Defendant terminated possession of the restaurant on May 11, 2016 when it ordered that the locks to the restaurant be changed;

D.      That this Court determine that Counter-Defendant terminated the Lease on May 11, 2016 when it re-entered the restaurant and resumed possession without providing notice to Counter-Plaintiffs;

E.      That this Court determine that Counter-Plaintiffs were no longer bound by the terms of the Lease as of May 11, 2016; and

F.      That this Court award Counter-Plaintiffs such other and further relief as in law and justice it may be entitled to receive.


Dated: June 22, 2016                       Respectfully submitted,

                                                 /s/
                                Avery Barton Strachan (Bar Number: 27556)
                                William N. Sinclair (Bar Number: 28833)
                                Kerri L. Smith (Bar Number: 05452)
                                Silverman | Thompson | Slutkin | White LLC
                                201 North Charles Street, Suite 2600
                                Baltimore, Maryland 21201
                                Phone: (410) 385-2225
                                Facsimile: (410) 547-2432
                                astrachan@mdattorney.com
                                bsinclair@mdattorney.com
                                ksmith@mdattorney.com

                                *Counsel for Defendants*