IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| KANSAS CITY LIVE BLOCK 124 RETAIL | ) |
| Plaintiff, | ) |
| v. | ) Civil Case No.: 14-CV-3236-GLR |
| KOBE KANSAS, LLC, ET AL. | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Kobe Kansas, LLC, Young W. Bae and Chan H. Bae, by and through undersigned counsel, submit this Memorandum of Law in Support of their Motion for Partial Summary Judgment ("Motion") on the Second Amended Complaint filed by Plaintiff Kansas City Live Block 124 Retail, LLC. In support, Defendants state:

**I. INTRODUCTION**

This case involves the alleged breach of a lease for premises located in the Power and Light District ("District" or "Power and Light District") of Kansas City, Missouri. The corporate entities, including Kansas City Live Block 124 Retail, LLC ("KC Live"), that own and operate the Power and Light District are controlled by the Cordish Company[1] ("Cordish"). Defendant Kobe Kansas, LLC ("Kobe"), as tenant, and Kansas City Live Block 124 Retail, LLC ("Plaintiff" or "KC Live"), as landlord, entered into a commercial lease for leased premises that were to be used for a restaurant. Defendants Young W. Bae and Chan H. Bae, individuals, executed a personal guaranty on the lease.

---
[1] The Cordish Company is one of the largest U.S.-based national, commercial real-estate development and entertainment operating companies.

In entering into the Lease, the parties agreed that it would be enforced and construed in accordance with Missouri law. Under Section 201(d) of that lease, Kobe agreed to pay Minimum Rent[2]. Under Section 301, Kobe also agreed to pay Additional Rent which includes a common area maintenance charge, taxes, promotional charges and trash. In Section 2605, the Lease addresses the protocol for recovery and compensation of late payments of Minimum Rent and Additional Rent. In addition, Section 2602(vii) addresses KC Live's remedy if Kobe failed to conduct business on the Premises during the Minimum Store Hours, as defined in Section 201(q) of the Lease, for more than three consecutive days.

KC Live filed a Second Amended Complaint seeking late fees pursuant to Section 2605 and liquidated damages pursuant to Section 2602(vii) of the Lease. The remedies contemplated by these sections were adjudged unenforceable penalty clauses by the Missouri Court of Appeals in the case styled Kansas City Live Block 139 Retail, LLC v. Fran's K.C. Ltd., et al., ___ S.W.3d ___, 2016 WL 4199002 (Mo. App. W.D. Aug. 19, 2016), a copy of which is attached hereto as **Exhibit A**, and for the reasons stated therein, and because the lease provisions in that case appear identical to the Lease provisions at issue here, all amounts claimed by KC Live pursuant to these Lease provisions are unenforceable as a matter of law. In addition, to the extent KC Live also seeks liquidated damages pursuant to Section 402 of the Lease, and late fees on those liquidated damages, which was not addressed in Fran's K.C., Ltd., for the reasons discussed below, that section is also an unenforceable penalty clause under Missouri law.

II. **FACTS**

---

[2] Any capitalized term used in Defendants' Motion has the same meaning as it has in the Lease, let's include the lease as an exhibit to make the law clerk's life easier.

On October 17, 2006, Kobe executed a ten-year lease for a 7,552 square foot space in the District (the "Premises"), later amended on September 15, 2008. *See* Lease, attached to Plaintiff's Second Amended Complaint as Exhibit 1. The Lease was made pursuant to, and is to be governed by and construed in accordance with, Missouri laws. Id. at § 2702.

By a Notice of Possession, KC Live notified Kobe that the 150-calendar day Fixturing Period began on September 9, 2008[3]. Id. at Explanatory Statement. Accordingly, under Section 321 of the Lease, the Rent Commencement Date was February 6, 2009, the day after the end of the Fixturing Period. Kobe Kansas' obligation to pay rent under the Lease commenced on the Rent Commencement Date, February 6, 2009. Id. at §§ 321, 701. The Rent Commencement Date also triggered the ten-year Term. Id. at §§ 201(b), 601. Kobe opened on October 17, 2009. Under Section 201(q), Kobe agreed to be open for the Minimum Store Hours.

Under Section 201(d), Kobe agreed to pay Minimum Rent for the first year of the Term in the amount of $177,472.00 annually and $14,789.33 monthly, which increased by twelve and one-half percent (12.5%) on the fifth anniversary of the Rent Commencement Date. Id. at § 201(d). Under Section 301, Kobe also agreed to pay Additional Rent which includes a common area maintenance charge, taxes, promotional charges and trash. Id. at §§ 802, 1002, 1102, 1704.

---

[3] According to the terms of the Lease, KC Live was not to provide Notice of Possession until it had substantially completed Landlord's Work as described in Exhibit C of the Lease. Upon information and belief, the Notice of Possession was provided to Kobe several months in advance of KC Live substantially completing Landlord's Work. For example, as of September 9, 2008, KC Live had yet to install a rooftop HVAC, increase the electrical service to the agreed upon amps, and extend gas service or a grease waste line as required by Exhibit C.

Section 26 of the Lease pertains to default under the Lease by the Tenant. Sections 2601(i) and (ii) identify occurrences that would constitute events of default under the Lease. Section 2602(vii) addresses the procedure if Kobe failed to conduct business in the Premises during the Minimum Store Hours as set forth in Section 201(q) for more than three (3) consecutive days. Id. In Section 2605, the Lease addresses the protocol for recovery and compensation of late payments of Rent and/or Additional Rent. Id.

Section 2601(i) states that failure of Kobe to pay any Rent when due would constitute an Event of Default. Pursuant to Section 2605, upon such monetary default, KC Live could assess a late charge according to the following terms:

> If Tenant fails to pay any Rent in accordance with the provisions of this Lease when such Rent becomes due and payable as specified in Section 711, Tenant shall pay to Landlord a late charge equal to the greater of five percent (5%) of the amount due of Two Hundred Fifty Dollars ($250.00) for each month that such Rent remains unpaid and, in addition, such unpaid Rent shall bear interest at the Lease Interest Rate. Such late charge and interest shall constitute Additional Rent hereunder immediately due and payable. If payments have been accelerated pursuant to Section 2602(iv) or 2602(v) above, all Additional Rent due under any provision of this Lease, including, but not limited to, all charges and interest shall be due and payable immediately.

Section 2601(ii) states that failure of Kobe to commence business by the end of the Fixturing Period would also constitute an Event of Default. If Kobe did not open the Restaurant by the expiration of the Fixturing Period, KC Live could collect "all Minimum Rent plus Additional Rent due under th[e] Lease plus an additional amount (which shall constitute Additional Rent under th[e] Lease) equal to $1,833 per day for each and every day from the Rent Commencement Date until the date Tenant opens for business …" Id. at § 402.

Finally, pursuant to Section 2602(vii), KC Live could collect additional liquidated damages according to the following terms upon an operating default:

> If Tenant fails to conduct its business operations at the Premises during the Minimum Store hours for more than three (3) consecutive business days, it is agreed and understood that Landlord shall have been deprived of an important right under this Lease and, as a result thereof, shall suffer damages in an amount which is not readily ascertainable; therefore, in addition to, and not in lieu of, any other remedies which Landlord has under this Lease, at law or in equity, Landlord shall have the right to collect as liquidated damages (and not as a penalty) three (3) times the Rent due for each month, or portion thereof, that such discontinuance shall persist. Notwithstanding the foregoing in this Section 2605(vii), Tenant shall not be deemed to have failed to be open for business if Tenant closes (a) the inventory (provided that such closing for inventory does not exceed 48 hours in any twelve (12) month period), (b) for Christmas Day, New Years Day, Labor Day, Memorial Day or Independence Day, or (c) during the period in which the Premises are untenantable due to fire or other casualty provided Tenant diligently pursues repairs and reopening.

On or about November 22, 2011, the parties entered into an Amendment to Lease (the "2011 Amendment") as a means of settling prior litigation instituted by KC Live against Kobe and the Baes. *See* 2011 Amendment, attached to Plaintiff's Second Amended Complaint as Exhibit 2. In the 2011 Amendment, KC Live claimed that Kobe and the Baes owed a Stipulated Amount as follows:

| Rent Owed Before Tenant Opening Late | $224,313.57 |
|---|---|
| Interest Owed Before Tenant Opening Late | $7,885.20 |
| Late Charges Owed Before Tenant Opening Late | $57,721.15 |
| Liquidated Damages Owed for Tenant Opening Late | $463,749.00 |
| Rent Owed After Tenant Opening Late | $288,732.96 |
| Interest Owed After Tenant Opening Late | $59,457.68 |
| Late Charges Owed After Tenant Opening Late | $317,961.59 |
| Late Charges on Liquidated Damages for Late Opening | $605,531.55 |
| Interest on Liquidated Damages for Late Opening | $97,078.19 |
| **Total** | **$2,122,430.88** |

On February 16, 2016, KC Live filed its Second Amended Complaint. In the Second Amended Complaint, KC Live seeks late fees for allegedly late payments of Rent and/or Additional Rent,

liquidated damages for Kobe's alleged late opening, late fees on the liquidated damages for Kobe's alleged late opening, and liquidated damages for the alleged failure of Kobe to operate in accordance with the Minimum Store Hours. *See* Second Amended Complaint ("SAC") at ¶¶ 45-49.

## III. LEGAL STANDARD

A movant is entitled to summary judgment under Federal Rule of Civil Procedure 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.C.P. 56(c). "Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial." LINC Fin. Corp. v. Onwuteaka, 129 F.3d 917, 920 (7th Cir. 1997). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1985).

## IV. ARGUMENT

### a. Section 2602(vii) and Section 2605 of the Lease are Unenforceable Under Missouri Law.

In Missouri, "liquidated damages clauses are valid and enforceable; penalty clauses are not." Grand Bissell Towers, Inc. v. Joan Gagnon Enters., Inc., 657 S.W.2d 378, 379 (Mo. Ct. App. 1983). In Fran's K.C. Ltd., supra, the Missouri Court of Appeals held that Section 2602(vii) and Section 2605 of the lease between KC Live and Fran's, substantively the same as the sections in the instant Lease, were unenforceable under Missouri law. 2016 WL 4199002 at * 11-12, 16.

Fran's was charged Minimum Rent and Additional Rent in addition to liquidated damages of three times the Rent due for each month of discontinuance as a penalty for not operating as a required by the Lease pursuant to a liquidated damages clause identical to the one in Section 2602(vii) of the Lease.

*Compare* 2016 WL 4199002 at *8 *with* Lease at § 2602(vii). In other words, Fran's lease, as well as the Lease in the instant case, call for an award of 300% of the contract amount for Liquidated Damages, in addition to Rent and Additional Rent that became due under the Lease in the normal course. The Missouri Court explained that "[b]ecause of the inflation between the potential damages caused by harm and the amount requested under the contract, it is clear that this provision functions to compel performance via penalty instead of simply providing just compensation." 2016 WL 4199002 at *11. "Therefore, this provision is unenforceable under Missouri law." Id.

In the instant case, KC Live seeks the same 300% penalty from Kobe. *See* SAC at ¶ 49. As a result, even assuming *arguendo* that Kobe was not operating in accordance with the Minimum Store Hours as KC Live alleges in its Second Amended Complaint, KC Live is not entitled to collect treble damages as well as the base rent owed because that would be excess compensation for any actual harm suffered, and therefore act as a penalty intended to compel performance. Accordingly, this Court should not allow KC Live to claim damages under this provision as a matter of law.

Similarly, the Missouri Court of Appeals held that the late charge provision found in Section 2605 "is not a valid liquidated damages clause and is instead an unenforceable penalty." 2016 WL 4199002 at *16. Fran's was charged late fees for late payment of Rent and Additional Rent pursuant to a clause identical to the one in Section 2605 of the Lease. *Compare* 2016 WL 4199002 at *12 *with* Lease at § 2605. Upon finding that the late charge provision in Fran's K.C., Ltd. did not expressly state that the fee was designed to compensate KC Live for administrative expenses, or any other actual damages, the Missouri court held that the late charge provision "compel[s] performance rather than compensate for damages." 2016 WL 4199002 at *15. The Court further noted that, because KC Live is entitled to collect interest on any unpaid Rent or Additional Rent, in addition to attorneys' fees, "th[o]se

contractual remedies would also serve to compensate KC Live for any harms it suffered as a result of rental delinquencies." 2016 WL 4199002 at *16.

In the instant case, KC Live seeks the same compounding late fee penalty from Kobe. *See* SAC at ¶ 45-47. As a result, KC Live is not entitled to collect late charges because that would be excess compensation for any actual harm suffered, and therefore act as a penalty intended to compel performance. Accordingly, this Court should not allow KC Live to claim late fees under this provision as a matter of law.

Finally, as further evidence that Section 2602(vii) and Section 2605 of the Lease are penalty clauses meant to compel performance, a corporate designee of KC Live recently explained that the application of liquidated damages and late fees is a decision made on a "case by case" basis by KC Live. *See* Transcript, 34:20-35:2, attached hereto as **Exhibit B**. Whether the late fees and liquidated are assessed is a matter of "what the tenant does," for example, whether the tenant continue to pay Minimum Rent despite not operating in accordance with their lease. Id., 34:12-13, 35:3-20.

    **b. The Liquidated Damages and Late Fees Must be Eliminated From the Stipulated Amount Sought by KC Live under the 2011 Amendment.**

As stated above, penalty clauses are not enforceable. "A penalty provision specifies a punishment for default, while liquidated damages are provided as a measure of compensation that, at the time of contracting, the parties agree will represent damages in the event of breach." City of Richmond Heights v. Waite, 280 S.W.2d 770, 776 (Mo. App. E.D. 2009). In determining whether an agreement sets forth liquidated damages of a penalty, Missouri courts look to whether the amount fixed as damages is "a reasonable prediction for the harm caused by the breach and the harms must be of a kind difficult to estimate accurately." Id. Consequently, the damages "must not be unreasonably disproportionate to the

amount of harm anticipated when the contract was made." Burst v. R.W. Beal & Co., Inc., 771 S.W.2d 87, 90 (Mo. App. E.D. 1989).

According to Section 402 of the Lease, late opening of the Restaurant led to the assessment of an "additional amount" of $1,833.00 per day, in addition to the Rent and Additional Rent due in the normal course. According to the 2011 Amendment, KC Live is attempting to collect from Kobe $224,313.57 in Rent and Additional Rent from February 6, 2009 through October 17, 2009. However, KC Live is also attempting to collect from Kobe liquidated damages for that same period of $463,749.00. These liquidated damages are over 200% of the contract amount. There is no indication that 200% of the contract amount is proportionate to the anticipate harm from Kobe's alleged late opening. Instead, Kobe is paying liquidated damages as well as the base rent owed, and therefore paying excess compensation for any actual harm suffered. As discussed in Fran's K.C., Ltd., the inflation between the potential damages caused by the harm and the amount requested under the Lease is a clear indicator that Section 402 functions to compel performance via penalty rather than provide just compensation. *See* 2016 WL 4199002 at *11. Accordingly, Section 402 should be held unenforceable under Missouri law as it is a penalty provision that "specifies a punishment for default." City of Richmond Heights, 280 S.W.3d at 776; *see also* Fran's K.C., Ltd., 2016 WL 4199002 at *11-12.

An enforceable late fee provision must be a "reasonable prediction of the harm caused by the breach." Phillips v. Missouri TLC, LLC, 468 S.W.3d 398, 407-08 (Mo. App. S.D. 2015). Per the 2011 Amendment, KC Live is attempting to collect from Kobe a late fee of the base rent of $57,721.15 in addition to interest on that same amount of $7,885.20. Similarly, KC Live is attempting to collect from Kobe a late fee on the Liquidated Damages of $605,531.55 in addition to interest on the same amount of $97,078.19. As a result, KC Live is collecting interest (presumably at 10%, the Missouri maximum),

plus an additional charge that compounds monthly based on the late fee provision found in 2605. As discussed, *supra*, Section 2605 is unenforceable as a matter of law because it is a penalty. *See* Phillips, 468 S.W.3d at 407-08.

For the foregoing reasons, KC Live's claim under the 2011 Amendment for "the unpaid balance of the Stipulated Amount" in the amount of $1,771,983.95 must be reduced by $1,444,963.29 to eliminate an award of damages under the unenforceable liquidated damages provision in Section 402 and the unenforceable late fee provision in 2605.

## V. CONCLUSION

KC Live's damages based on the liquidated damages clause relating to the cessation of business operations in accordance with the Minimum Store Hours for three consecutive days found in Section 2602(vii) and for late fees pursuant to Section 2605 are unenforceable as a matter of law according to the Missouri Court of Appeals in Fran's K.C., Ltd. because both provisions are designed to compel performance rather than provide just compensation. 2016 WL 4199002 at *21. Similarly, the liquidated damages contemplated by Section 402 for late opening, and the associated late fees are also unenforceable as a matter of law because they are penalties that specify punishment for default, rather than compensation for actual harm. *See* Phillips, 468 S.W.3d at 407-08.

WHEREFORE, for the foregoing reasons, Defendants Kobe Kansas, Young Bae and Chan Bae respectfully request that the Court grant their Motion for Partial Summary Judgment.

Dated: October 18, 2016				Respectfully submitted,

								/s/
								Avery Barton Strachan (Bar Number: 27556)
								William N. Sinclair (Bar Number: 28833)
								Kerri L. Smith (Bar Number: 05452)
								Silverman | Thompson | Slutkin | White LLC
								201 North Charles Street, Suite 2600
								Baltimore, Maryland 21201
								Phone: (410) 385-2225
								Facsimile: (410) 547-2432
								astrachan@mdattorney.com
								bsinclair@mdattorney.com
								ksmith@mdattorney.com
								*Counsel for Defendants*